**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

**UNITED STATES OF AMERICA**

        **Plaintiff,**                             **Case No. 04-20120 JWL**

**v.**                                             **05-3411-JWL**

**EDGAR ILLESCAS,**

        **Defendant.**

**<u>MEMORANDUM AND ORDER</u>**

Through a memorandum and order (doc. 48) issued on April 4, 2006, this court appointed Mr. Illescas counsel and granted his request for an evidentiary hearing to explore the facts surrounding his claim of ineffective assistance of counsel during his sentencing before this court on March 28, 2005. Mr. Illescas had pled guilty on January 3, 2005, to conspiracy with intent to distribute more than 100 kilograms of marijuana and possession with intent to distribute more than 60 kilograms of marijuana, and the court had sentenced him to a prison term of 60 months.

After conducting an evidentiary hearing on this matter on May 22, 2006, the court is now prepared to rule on Mr. Illescas's motion to vacate his sentence under 28 U.S.C. § 2255 (doc. 40), which the court had taken under advisement. As both parties agreed at the hearing, the sole issue is whether Mr. Illescas received ineffective assistance of counsel at sentencing on March 28, 2005, when his former counsel did not pursue application of the safety valve

1

when, although unknown to former counsel, the United States would have allowed Mr. Illescas to reverse his sworn statements by implicating his brother, Sergio, and a confederate named Mike. As explained below, the court finds that Mr. Illescas did not receive constitutionally deficient representation. To the contrary, his former counsel made a reasonable tactical decision to recommend that Mr. Illescas not argue for application of the safety valve because doing so would have risked an enhanced sentence and, independently, would have forced Mr. Illescas to incriminate his brother, which he insisted to former counsel on the day of sentencing that he would not do. Mr. Illescas agreed with the recommendation at the time and he is bound by its consequences now.

### STANDARD FOR A § 2255 MOTION

Title 28 U.S.C. § 2255 entitles a prisoner to relief "[i]f the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." *Id*. A § 2255 motion is not a substitute for appeal and therefore relief is not available merely because of error that may have justified reversal on direct appeal. *United States v. Frady*, 456 U.S. 152, 165 (1982); *United States v. Addonizio*, 442 U.S. 178, 184 (1979).

Rather, relief under § 2255 is warranted only for jurisdictional or constitutional claims or errors that reveal "a fundamental defect which inherently results in a complete miscarriage of justice." *Addonizio*, 442 U.S. at 185 (internal quotation omitted); *accord Davis v. United States*, 417 U.S. 333, 346 (1974) (same). "The standard of review of Section 2255 petitions

2

is quite stringent," and "[t]he court presumes that the proceedings . . . were correct." *United States v. Nelson*, 177 F. Supp. 2d 1181, 1187 (D. Kan. 2001)(citing *Klein v. United States*, 880 F.2d 250, 253 (10th Cir. 1989)). "To prevail, [the] defendant must show a defect in the proceedings which resulted in a 'complete miscarriage of justice.'" *Id.* (quoting *Davis v. United States*, 417 U.S. 333, 346 (1974)).

**<u>BACKGROUND</u>**

At the hearing before this court on May 22, 2006, only Mr. Illescas's former counsel testified. That hearing confirmed that at the time of sentencing in March 2005, former counsel for Mr. Illescas faced a challenging course in obtaining a favorable sentence for his client. When former counsel first entered his appearance in the case, Mr. Illescas already had pled guilty to conspiracy with intent to distribute more than 100 kilograms of marijuana and possession with intent to distribute more than 60 kilograms of marijuana. Thus, stripped of any bargaining power that a jury would not find his client guilty, former counsel had to devise a strategy for sentencing with limited factors in his favor.

Former counsel testified that throughout his representation of Mr. Illescas, they had discussed the possible length of sentence the court would impose. That possible sentence ranged from 37 months to beyond 60 months, based on whether the court added or subtracted points for acceptance of responsibility, obstruction of justice, role in the offense, and the safety valve. Significantly, former counsel testified that from the inception of his relationship with Mr. Illescas, he had explained that the court was bound by a statutory mandatory minimum sentence of 60 months for the crimes at issue. The only way to obtain a sentence less than 60

3

months, he advised Mr. Illescas, was with a two-point reduction through application of the safety valve.[1]

As expected, much of the May 22, 2006, hearing focused on former counsel's thoughts at the time of sentencing regarding the possibility of obtaining the safety valve for Mr. Illescas. Based, in part, on the release of the presentence investigation report ("the PSIR") and objections by both Mr. Illescas and the United States, the March 2005 sentencing hearing was certain to be contentious. The PSIR recommended that Mr. Illescas receive two to three points for acceptance of responsibility and two points for playing a minor role in the offense. It did not, however, recommend that Mr. Illescas receive two points through the safety valve, primarily because the probation officer who authored the PSIR had received information from the United States that Mr. Illescas had spoken deceptively and untruthfully about the criminal involvement of Sergio and Mike.

The United States also had supplied information to former counsel that affirmatively contradicted Mr. Illescas's previous assurances to prosecutors that Sergio and Mike were not connected to the drug conspiracy at issue in the case. On March 25, 2005, former counsel received telephone records from the United States that tied Sergio and Mike to the conspiracy. He further testified that when he revealed those records to Mr. Illescas on March 28, 2005, the day of sentencing, Mr. Illescas candidly admitted that Sergio and Mike were active participants

---

[1] In its previous memorandum and order (doc. 40) on this matter, the court outlined the various requirements for a defendant to obtain application of the safety valve. The court will forego a repeated discussion in this opinion.

in the drug conspiracy.

That revelation by Mr. Illescas broadened the strategic options available to former counsel at the sentencing hearing later that day.   Leading up to the sentencing hearing, the United States had objected to the PSIR's suggestion that Mr. Illescas receive two points for playing a minor role in the offense, and former counsel had objected to the PSIR's suggestion that Mr. Illescas not receive two points under the safety valve.   Sometime between March 25, 2005, and March 28, 2005, former counsel for Mr. Illescas and counsel for the United States had brokered a deal in which each side would remove its respective objection.   Faced with the option of having Mr. Illescas admit that Sergio and Mike were engaged in the conspiracy, however, former counsel had a new possible bargaining strategy.   As the May 22, 2006, hearing exposed, at the time of sentencing, counsel for the United States would have consented to application of the safety valve if Mr. Illescas had in fact candidly acknowledged the involvement of Sergio and Mike, even though on numerous occasions before Mr. Illescas  had insisted that Mike and Sergio were uninvolved.

Although former counsel could have attempted to persuade Mr. Illescas to provide the incriminating information about Sergio and Mike to the United States that day, former counsel never pursued this option.   As Mr. Illescas points out, former counsel never approached counsel for the United States to ask whether he would permit Mr. Illescas to be fully truthful in exchange for dropping the objection to Mr. Illescas's application for the safety valve.   That omission by former counsel underlies Mr. Illescas's § 2255 challenge.

## DISCUSSION

5

1.        **Standard for Demonstrating Ineffective Assistance of Counsel**

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel.   Under the *Strickland* test, a petitioner must first demonstrate that counsel's performance "fell below an objective standard of reasonableness."  *Id.* at 688.   As the one raising the challenge, it is Mr. Illescas who "bears the burden of establishing that his trial counsel 'made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'"   *Sallahdin v. Mullin*, 380 F.3d 1242, 1247-48 (10th Cir. 2004) (quoting *Strickland*, 466 U.S. at 687).

There is no question that it is exceptionally difficult for a criminal defendant to meet this standard.   "Review of counsel's performance under this prong is 'highly deferential.'"  *Id.* (quoting *Strickland*, 466 U.S. at 689).   Indeed, this court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'"  *Id.*   (quoting *Strickland*, 466 U.S. at 689). *See also Bullock v. Carver*, 297 F.3d 1036, 1044 (10th Cir. 2002) (same).   "To surmount the strong presumption of reasonable professional assistance, a criminal defendant bears the burden of proving, by a preponderance of the evidence, that his trial counsel acted unreasonably."  *Id*.

The Supreme Court in *Strickland* urged that "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy

6

for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." 466 U.S. at 689-90. To avoid second-guessing counsel's choices at sentencing, we are to "make every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 690. Mr. Illescas "bears a heavy burden in that he must overcome the presumption that his counsel's actions were sound trial strategy, in the context of his case." *Fox v. Ward*, 200 F.3d 1286, 1295 (10th Cir. 2000). Moreover, we are to "address not what is prudent or appropriate, but only what is constitutionally compelled." *Id.* (quoting *Strickland*, 466 U.S. at 689).

If the first prong is satisfied, the court then examines the second prong, which requires the petitioner to "show that counsel's deficient performance prejudiced the defense . . . ." *Le v. Mullin*, 311 F.3d 1002, 1024-25 (10th Cir. 2002). To succeed, the petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 1025 (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Bullock*, 297 F.3d at 1044.

Finally, the court "may address the performance and prejudice components in any order, but need not address both if [Mr. Illescas] fails to make a sufficient showing of one." *Cooks v. Ward*, 165 F.3d 1283, 1292-93 (10th Cir. 1998).

**2.     Former Counsel Provided Constitutionally Adequate Representation**

**A.     The Unrefuted Testimony Shows that Mr. Illescas Made the Ultimate Decision**

Evaluating Mr. Illescas's instructions to former counsel confirms that former counsel pursued a reasonable strategy. To have obtained the safety valve, Mr. Illescas had to incriminate Sergio and Mike. But because Sergio is Mr. Illescas's brother, Mr. Illescas explicitly told former counsel the day of sentencing that he would not make a full, truthful disclosure. Former counsel's testimony was clear about that point at the May 22, 2006, hearing, and that testimony was never refuted. He, in fact, testified that even when he showed the phone records confirming that Sergio and Mike were connected in the drug conspiracy, Mr. Illescas advised him that he would not provide information against his brother. Additionally, when the court directly asked former counsel at the May 22 hearing whose decision it was not pursue the safety valve, former counsel answered unwaveringly that it was Mr. Illescas's decision, based on former counsel's recommendation. None of former counsel's testimony, as the United States properly emphasized in closing, was ever refuted.

Thus, based on the only testimony introduced at the May 22, 2006, hearing, Mr. Illescas dictated the ultimate strategy not to pursue the safety valve at sentencing. Although he alleges that former counsel failed him by not contacting counsel for the United States to see if a deal was possible based on full disclosure about Sergio and Mike, former counsel established that on the day of sentencing, Mr. Illescas explicitly told him that he would not incriminate his brother. Former counsel relied on that instruction because he was bound to follow the ultimate decision of Mr. Illescas not to reveal the involvement of Sergio and Mike in the conspiracy.

To the extent former counsel did not investigate the possibility of reaching a deal to obtain the safety valve, he did so in reliance on Mr. Illescas's statement to him that he would

8

not incriminate Sergio. "'Although trial counsel has an independent duty to investigate and make a case in defense, counsel also has to be responsive to the wishes of his client.'" *Bryan v. Mullin*, 335 F.3d 1207, 1219 (10th Cir. 2003) (en banc) (quoting *Romano v. Gibson*, 239 F.3d 1156, 1181 (10th Cir. 2001). In evaluating his diligence, "[t]he reasonableness of counsel's decision not to investigate may be determined or greatly influenced by the petitioner's statements or behavior." *Wallace v. Ward*, 191 F.3d 1235, 1247 (10th Cir. 1999) (citing *Strickland*, 466 U.S. at 691); *see also James v. Gibson*, 211 F.3d 543, 557 (10th Cir. 2000) ("we conclude counsel's failure to investigate or present other evidence as directly influenced by [the defendant]").

Taken in context, then, Mr. Illescas is essentially estopped from arguing that his attorney failed to pursue a strategic option that Mr. Illescas himself directly foreclosed by his instructions to him, particularly when Mr. Illescas did not introduce any testimony or evidence to the contrary.

## B.      Strategic Calculations

The court will nevertheless address the reasonableness of former counsel's recommendation to Mr. Illescas that Mr. Illescas not pursue the safety valve. In evaluating Mr. Illescas's challenge under the *Strickland* framework, the court has no difficulty concluding that former counsel provided constitutionally sufficient representation to Mr. Illescas. At the time of sentencing, former counsel faced a dilemma. For months leading up to his sentencing, Mr. Illescas repeatedly had told authorities that Sergio and Mike were not involved in the drug conspiracy. On the day of his sentencing, however, he revealed to former counsel that he had

repeatedly misled authorities regarding Sergio and Mike.

Perhaps former counsel could have floated a "hypothetical" proposition to test whether counsel for the United States would have allowed Mr. Illescas to "come clean" in  in order to gain the government's assent in his request for application of the safety valve.  But that would have been a dangerous course to follow.  At that point, on March 28, 2005, former counsel had negotiated a deal under which Mr. Illescas would likely receive a total of five points for acceptance of responsibility and playing a minor role in the offense.   Had former counsel revealed that his client's story to authorities—which was memorialized in numerous sworn pleadings filed with the court—was false and misleading, he risked losing those five points. As former counsel testified at the May 22 hearing, his client's false statements could easily have been construed by the court as obstruction of justice.  Thus, if former counsel had exposed his client's false statements regarding Sergio and Mike, he risked provoking the court into enhancing Mr. Illescas's sentence with obstruction of justice, which in turn likely would have negated any points that might have been awarded for acceptance of responsibility.  *See United States v. Sarracino*, 340 F.3d 1148, 1174 (10th Cir. 2003) (quoting U.S.S.G. § 3E1.1(a)) (observing that "false testimony that results in an enhancement for obstruction of justice generally is inconsistent with an adjustment for acceptance of responsibility.").   Thus, the guaranteed result he negotiated for his client could have collapsed, leaving Mr. Illescas with a prison term longer than 60 months.

A similar sentencing scenario was at play in *United States v. Stewart*, 51 F. Supp. 2d 1147 (D. Kan. 1999).  The criminal defendant in that case contended that his counsel had failed

him at sentencing by not calling him to the stand to testify. The court explained that calling the defendant to the stand, however, would have been "a course fraught with danger" because "most experienced counsel would be chary of subjecting him to the rigors of cross-examination." *Id.* at 1158-59. Moreover, if the defendant had testified, he would have "exposed himself to the possibility of increasing his sentence by receiving an enhancement for obstruction of justice and simultaneously losing the chance of earning a three point reduction for acceptance of responsibility." *Id.*

It was reasonable for former counsel in this case to recommend to Mr. Illescas that it was too risky to have Mr. Illescas change his story the day of sentencing. Former counsel had devised a sentencing posture that made it highly likely that the court would award his client three points for acceptance of responsibility and two points for playing a minor role in the offense. These five points more than outweighed the possibility of gaining two points by application of the safety valve. By adhering to the deal negotiated with the United States not to request application of the safety valve, Mr. Illescas was virtually certain to receive no more than the mandatory minimum sentence of 60 months. Had former counsel recommended that Mr. Illescas not accept that deal, those gains could have vanished, and Mr. Illescas very easily could have received a sentence in excess of 60 months. *See United States v. Bey*, 1998 WL 919127, \*4 (D. Kan. 1998), aff'd, *United States v. Bey*, 2000 WL 217059 (10th Cir. 2000) (approving of counsel's tactical decision at sentencing to pursue a similar path as former counsel in this case by not risking an enhanced sentence for obstruction of justice).

Evaluating former counsel's actions from his perspective and under the conditions he

11

faced at the time, Mr. Illescas has not even come close to satisfying the first prong of the *Strickland* test. Former counsel did not refrain from arguing for application of the safety valve because he was lazy or unwilling to test the government's evidence, as the allegations in Mr. Illescas's § 2255 petition suggest. Instead, former counsel actively evaluated the evidence regarding Sergio and Mike produced by the United States, and he then devised a plan to maximize Mr. Illescas's situation. By recommending that Mr. Illescas agree not to seek the safety valve, he was ensuring that Mr. Illescas would receive two points for playing a minor role in the offense, an adjustment he was far from guaranteed to receive otherwise based on the United States' earlier objection. These two points he gained were equal to the two points he lost by not pursuing the safety valve and avoided the risk of other adverse rulings.

The court will not second-guess this reasonable sentencing strategy. "'For counsel's actions to rise to the level of constitutional ineffectiveness, his strategic decisions must have been completely unreasonable, not merely wrong, so that [they] bear no relationship to a possible defense strategy.'" *Fox*, 200 F.3d at 1296 (quoting *Hatch*, 58 F.3d at 1459). Former counsel's decision not to have Mr. Illescas change his story at the moment of sentencing "is a classic example of a strategic . . . judgment, the type of act for which *Strickland* requires that judicial scrutiny be highly deferential. It constitutes a conscious, tactical choice between two viable alternatives." *Hatch*, 58 F.3d at 1459-60 (internal quotations omitted). *See also id*. ("Tactical decisions, whether wise or unwise, successful or unsuccessful, cannot ordinarily form the basis of a claim for ineffective assistance.") (quotation omitted).

12

**Conclusion**

As explained above, the court rejects the claim that former counsel provided constitutionally ineffective assistance to Mr. Illescas.

**IT IS THEREFORE ORDERED BY THE COURT** that Mr. Illescas's motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 based on ineffective assistance of counsel at sentencing (doc. 40) is denied.

**IT IS SO ORDERED** this 26th day of May, 2006.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge

13